**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | |
|---|---|
| **JAYDEN BAKER, Individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Case No. __________________** |
| **v.** | **JURY TRIAL DEMANDED** |
| **SYNERGY HOME AND COMMERCIAL SERVICES LLC and JUAN HERNANDEZ,** | **CLASS ACTION PURSUANT TO FED. R. CIV. P. 23** |
| **Defendants.** | |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiff—Jayden Baker ("Plaintiff" or "Baker")—brings this action individually and on behalf of all current and former hourly employees (collectively, "Plaintiff and the Putative Class Members"), who worked for Defendants—Synergy Home and Commercial Services LLC ("Synergy") and Juan Hernandez ("Hernandez") (collectively, "Defendants")—at any time from six (6) years preceding the filing of the Original Complaint, through the final disposition of this matter, to recover statutory damages, actual damages, costs, and attorneys' fees pursuant to 26 U.S.C. § 7434 for Defendants' willful filing of fraudulent information returns.

## I.
## OVERVIEW

1. This is a class action brought pursuant to FED. R. CIV. P. 23 to recover statutory damages, actual damages, and other relief under 26 U.S.C. § 7434, which creates a private cause of action against any person who willfully files a fraudulent information return with respect to payments purported to be made to any other person.

2. Plaintiff and the Putative Class Members are those current and former hourly employees who were employed by Synergy at any time from six (6) years preceding the filing of the Original Complaint, through the final disposition of this matter, and for whom Defendants willfully filed (and continue to file) fraudulent information returns—including IRS Forms W-2—underreporting the wages actually paid to them.

3. Although Synergy paid Plaintiff and the Putative Class Members wages for the work they performed—including overtime wages for hours worked in excess of forty (40) per workweek—Defendants reported only a fraction of those wages on the Forms W-2 they filed with the Internal Revenue Service ("IRS") and the Social Security Administration ("SSA").

4. Specifically, Defendants' regular practice—including during years when Plaintiff and the Putative Class Members earned wages substantially in excess of the amounts reported—was (and is) to file Forms W-2 that report only a portion of the wages actually paid, concealing the remainder—including overtime wages—from federal taxing authorities.

5. For example, Synergy paid Plaintiff Baker approximately $70,000.00 in wages during the 2025 tax year, but the Form W-2 Defendants filed for Plaintiff Baker reported only $39,452.07—and even the purported "corrected" Form W-2c Defendants later filed (after Plaintiff Baker informed them of the original's inaccuracy) reported only $43,017.89.

6. The effect of Defendants' practices was (and is) that Plaintiff and the Putative Class Members' true earnings were (and are) not credited to them in the records of the IRS and the SSA; thus, Defendants have understated Plaintiff and the Putative Class Members' lifetime earnings for purposes of their future Social Security benefits, deprived them of the federal income tax deduction for qualified overtime compensation under 26 U.S.C. § 225, and exposed them to the costs of resolving the deficiencies created by Defendants' fraudulent filings.

7. Defendants knowingly and deliberately filed fraudulent information returns for Plaintiff and the Putative Class Members on a routine and regular basis during the relevant time period.

8. Plaintiff Baker discovered the underreporting and reported it to Defendant Hernandez.

9. Rather than correct the filings, Defendants filed a Form W-2c that raised Plaintiff Baker's reported wages to only $43,017.89—a purported correction Defendants knew still underreported the wages actually paid by more than $25,000.00.

10. Plaintiff and the Putative Class Members seek to recover, for each fraudulent information return, the greater of $5,000.00 or the sum of their actual damages, plus the costs of this action and reasonable attorneys' fees, pursuant to 26 U.S.C. § 7434(b), as a class action pursuant to FED. R. CIV. P. 23.

11. Plaintiff also prays that the Rule 23 class be certified as defined herein with Plaintiff Baker designated as the Class Representative of the IRS Fraud Class.

## II.
## THE PARTIES

12. Plaintiff—Jayden Baker ("Baker")—was employed by Synergy in Texas during the relevant time period. Defendants willfully filed one or more fraudulent information returns underreporting the wages actually paid to Plaintiff Baker.

13. The IRS Fraud Class Members are those current and former hourly employees who were employed by Synergy at any time from six (6) years preceding the filing of the Original Complaint, through the final disposition of this matter, and have been subjected to the same illegal information-reporting practice as Plaintiff Baker.

14. Defendant Synergy Home and Commercial Services LLC ("Synergy") is a Texas limited liability company with its principal place of business in Corpus Christi, Texas, and may be

served through its registered agent for service of process: **InCorp Services, Inc., 815 Brazos St., Austin, Texas 78701**.

15. Defendant Juan Hernandez ("Hernandez") is an individual who resides in Texas and is the owner and operator of Synergy. Defendant Hernandez may be served with process at: **7517 S. Lake Dr., Corpus Christi, Texas 78414, or wherever he may be found**.

16. At all relevant times, Defendant Hernandez exercised control over Synergy's payroll, compensation, and tax-reporting practices; determined the amounts reported on the Forms W-2 at issue; and personally prepared, signed, and/or transmitted (or directed the preparation and transmission of) those Forms W-2.

17. Each Defendant qualifies as a "person" within the meaning of 26 U.S.C. §§ 7434(a) and 7701(a)(1), and is responsible, individually and jointly, for the unlawful conduct alleged in this Complaint.

## III.
## JURISDICTION & VENUE

18. This Court has subject matter jurisdiction over Plaintiff Baker's claims pursuant to 28 U.S.C. § 1331, as this is an action arising under 26 U.S.C. § 7434.

19. Plaintiff has not entered into any arbitration agreement that would affect the Court's jurisdiction.

20. This Court has general personal jurisdiction over Defendant Synergy because Texas qualifies as its home state, and Defendant Synergy maintains its principal place of business in Corpus Christi, Texas, all of which is located within this District and Division.

21. This Court has general personal jurisdiction over Defendant Hernandez because he is a resident of the State of Texas.

22. Venue is proper pursuant to 28 U.S.C. § 1391 in the Southern District of Texas, Corpus Christi Division, because this is a judicial district where a substantial part of the events or omissions giving rise to the claims occurred.

23. Specifically, Defendant Synergy's headquarters are located in Corpus Christi, Texas, and Plaintiff Baker was employed by Synergy in Corpus Christi, Texas—all of which are located within this District and Division.

## IV.
## BACKGROUND FACTS

24. Defendant Synergy is a Corpus Christi, Texas-based home and commercial services company that provides heating, ventilation, and air conditioning ("HVAC") installation, maintenance, and repair services to residential and commercial customers.[1]

25. Defendant Hernandez owns and operates Synergy and controls its day-to-day operations, including its payroll, compensation, and tax-reporting practices.

26. To provide its services, Synergy employed (and continues to employ) numerous HVAC technicians and other employees—including Plaintiff and the individuals that make up the Putative Class Members.

27. Plaintiff Baker was employed by Synergy as an HVAC technician in Corpus Christi, Texas from approximately February 2025 until approximately March 2026.

28. Plaintiff and the Putative Class Members' job duties include installing, maintaining, and repairing HVAC systems and performing related home- and commercial-services work for Synergy's residential and commercial customers.

29. While exact job titles may differ, these employees were subjected to the same or similar illegal information-reporting practices.

---

[1] https://synergyhomeandcommercial.com/ (last visited November 9, 2026).

**Plaintiff and the Putative Class Members are Similarly Situated**

30. Plaintiff and the Putative Class Members are similarly situated with respect to their pay structure, the manner in which Defendants reported (and report) their wages to federal taxing authorities, and the policies (and practices) of Defendants resulting in the complained of violations of 26 U.S.C. § 7434.

31. Plaintiff and the Putative Class Members are similarly situated with respect to their pay structure—that is, Synergy paid (and pays) them wages—including overtime wages—substantially in excess of the amounts Defendants reported on the information returns Defendants filed with the IRS.

32. Plaintiff and the Putative Class Members are similarly situated with respect to Defendants' policies (and practices)—that is, Defendants applied (and apply) the same fraudulent underreporting practice to all of them, uniformly and as a matter of policy.

**Defendants Filed Fraudulent Information Returns**

33. Every employer, including Synergy, is required to file with the federal government a Form W-2 for each of its employees reporting, among other things, the total wages paid to that employee during the tax year. *See* 26 U.S.C. § 6051(a), (d).

34. A Form W-2 is an "information return" within the meaning of 26 U.S.C. § 7434(f) because it is a statement described in 26 U.S.C. § 6724(d)(1)(A).

35. During the 2025 tax year, Synergy paid Plaintiff Baker approximately $68,860.29 in wages, including overtime wages for hours worked in excess of forty (40) per workweek.

36. Defendants ran a two-track payroll.

37. Some of Plaintiff Baker's paychecks were processed through Synergy's payroll provider, Gusto, and appear in Plaintiff Baker's Gusto employee account.

38. At least nine (9) paychecks issued to Plaintiff Baker in 2025, however, were processed outside of the reported payroll—the paystubs for those payments do not appear in Plaintiff Baker's Gusto account, and the wages they reflect were never reported to the federal government.

39. The paystubs Defendants issued for the off-the-books payments show running year-to-date totals that include the concealed wages, while the next paystub processed through the reported payroll reverts to a lower year-to-date total that excludes them—demonstrating that Defendants recorded the payments and then deleted them from the payroll they reported.

40. Defendants also withheld federal income tax and payroll taxes from the off-the-books paychecks—approximately $3,900.00 in 2025—but never included those wages or withholdings on any information return filed for Plaintiff Baker, depriving Plaintiff Baker of credit for taxes withheld from his pay.

41. On or about February 6, 2026, Defendants filed with the federal government a Form W-2 for Plaintiff Baker for the 2025 tax year reporting only $39,452.07 in wages—approximately $30,000.00 less than the wages actually paid to him.

42. Among the wages Defendants omitted from Plaintiff Baker's Form W-2 were overtime wages paid to him for hours worked in excess of forty (40) per workweek.

43. The Form W-2 reported only $4,600.90 of qualified overtime compensation—the portion attributable to the reported payroll—and omitted the overtime compensation Defendants paid outside of it.

44. The wages Synergy actually paid Plaintiff Baker are reflected in Plaintiff Baker's pay records and bank records, and in Defendants' own payroll, banking, and business records.

45. After receiving his copy of the Form W-2, Plaintiff Baker discovered the underreporting, promptly reported it to Defendant Hernandez, and requested that Defendants correct it.

46. In response, Defendants filed with the federal government a Form W-2c, Corrected Wage and Tax Statement, for Plaintiff Baker's 2025 tax year that raised his reported wages to only $43,017.89—still more than $20,000.00 less than the wages Synergy actually paid him.

47. Defendants knew the "corrected" figure was false when they filed it.

48. Defendants also fabricated tax-onboarding paperwork for Plaintiff Baker: the Form W-4 in Synergy's files for Plaintiff Baker, dated February 25, 2025, bears a signature that is not Plaintiff Baker's.

49. On information and belief, Defendants filed (and continue to file) fraudulent information returns underreporting the wages actually paid to all, or substantially all, of Synergy's employees, pursuant to a uniform practice that Defendant Hernandez personally directs.

50. Plaintiff Baker's belief is based on, among other things, his conversations with other Synergy employees who identified the same discrepancies between the wages they received and the wages reported on their Forms W-2, and on the fact that Defendant Hernandez personally administers payroll and tax reporting for all Synergy employees under the same practice.

51. Defendants underreport their employees' wages purposefully—to evade the employment taxes, withholding obligations, and other costs that accurate reporting would impose on Defendants.

52. On information and belief, Defendants' underreporting practice did not end with Plaintiff Baker's employment—Defendants continue to pay Synergy's current employees wages in excess of the amounts Defendants report and, as their past filings demonstrate, will continue filing fraudulent information returns absent relief.

**Defendants' Fraudulent Filings Damaged Plaintiff and the Putative Class Members**

53. Social Security retirement and disability benefits are calculated on the basis of a worker's lifetime earnings as credited to the earnings record the SSA maintains for that worker.

54. Because Defendants underreported the wages they actually paid, Plaintiff and the Putative Class Members' SSA earnings records understate their true earnings, reducing the Social Security benefits they will be entitled to receive.

55. This injury is common to every IRS Fraud Class Member: each IRS Fraud Class Member's SSA earnings record was understated the moment Defendants filed a Form W-2 reporting less than the wages actually paid.

56. Additionally, for tax years 2025 through 2028, federal law allows an individual income tax deduction of up to $12,500.00 per year for qualified overtime compensation. *See* 26 U.S.C. § 225.

57. The deduction is available only for qualified overtime compensation that is reported on the statements furnished to the individual, including the Form W-2. *See* 26 U.S.C. §§ 225(a), 6051(a)(19).

58. Because Defendants concealed from federal taxing authorities the very wages—including overtime compensation—that were actually paid, Plaintiff and the Putative Class Members cannot claim, or substantiate their entitlement to, the qualified overtime compensation deduction for tax years 2025 through 2028, increasing their federal income tax liability.

59. Plaintiff and the Putative Class Members have also incurred (and will incur) costs attributable to resolving the deficiencies and discrepancies created by Defendants' fraudulent filings—including the costs of preparing corrected or amended tax filings and related professional fees—and have been deprived of credit for taxes Defendants withheld from their pay but never reported.

60. Defendants knew that the information returns they filed for Plaintiff and the Putative Class Members were fraudulent because Defendants' own payroll and business records reflect the wages Defendants actually paid.

61. Defendants' actions therefore constitute willful violations under the law and were not made in good faith.

62. Defendants knew or should have known that filing fraudulent information returns would cause, did cause, and continues to cause financial injury to Plaintiff and the Putative Class Members.

63. Plaintiff and the Putative Class Members seek to recover, for each fraudulent information return, the greater of $5,000.00 or the sum of their actual damages, plus costs and reasonable attorneys' fees, under 26 U.S.C. § 7434 as a class action pursuant to FED. R. CIV. P. 23.

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Class Action Alleging Violation of 26 U.S.C. § 7434)**

### A. SECTION 7434 COVERAGE

64. All previous paragraphs are incorporated as though fully set forth herein.

65. The "IRS Fraud Class" is defined as:

**ALL CURRENT AND FORMER HOURLY EMPLOYEES WHO WERE EMPLOYED BY SYNERGY HOME AND COMMERCIAL SERVICES LLC AT ANY TIME FROM SIX (6) YEARS PRECEDING THE FILING OF THE ORIGINAL COMPLAINT, THROUGH THE FINAL DISPOSITION OF THIS MATTER ("IRS Fraud Class Members").**

66. At all material times, Synergy was an employer required to file an information return—including a Form W-2—for each of its employees reporting the wages actually paid. *See* 26 U.S.C. § 6051(a), (d).

67. At all material times, each Defendant was a "person" within the meaning of 26 U.S.C. §§ 7434(a) and 7701(a)(1).

68. The Forms W-2 that Defendants filed are "information returns" within the meaning of 26 U.S.C. § 7434(f) because they are statements described in 26 U.S.C. § 6724(d)(1)(A).

69. The precise size and identity of the proposed IRS Fraud Class should be ascertainable from the business records, tax records, payroll records, and/or employee and personnel records of Defendants.

70. Accordingly, the IRS Fraud Class should be certified as defined in Paragraph 65.

## B. FRAUDULENT FILING OF INFORMATION RETURNS UNDER 26 U.S.C. § 7434

71. All previous paragraphs are incorporated as though fully set forth herein.

72. Defendants violated 26 U.S.C. § 7434(a) by willfully filing fraudulent information returns with respect to payments purported to be made to Plaintiff and the IRS Fraud Class Members—that is, Forms W-2 that Defendants knew underreported the wages actually paid.

73. Each such Form W-2 misrepresented the amount of the payments made, reporting materially less than the wages actually paid.

74. Defendants filed at least two fraudulent information returns with respect to Plaintiff Baker's 2025 wages alone: the original Form W-2 filed on or about February 6, 2026, reporting $39,452.07, and the Form W-2c reporting $43,017.89.

75. Each willfully filed fraudulent information return gives rise to a separate violation of 26 U.S.C. § 7434.

76. Defendants knew the amounts actually paid to Plaintiff and the IRS Fraud Class Members because those amounts are reflected in Defendants' own payroll and business records, and Defendants deliberately reported lesser amounts on the information returns they filed.

77. Moreover, Defendants knowingly, willfully, and with reckless disregard carried out their illegal pattern of filing fraudulent information returns underreporting the wages actually paid to Plaintiff and the IRS Fraud Class Members.

78. Defendants' willfulness is further demonstrated by their response to Plaintiff Baker's complaint: after Plaintiff Baker reported the underreporting to Defendant Hernandez, Defendants

filed a purported correction that they knew still underreported Plaintiff Baker's wages by more than $20,000.00.

79. Defendants are sophisticated parties and employers, and knew that the information returns they filed were fraudulent.

80. Plaintiff and the IRS Fraud Class Members, on the other hand, are (and were) less sophisticated employees who trusted Defendants to report their wages according to the law.

81. The decision and practice by Defendants to file information returns underreporting the wages actually paid was willful, and was neither reasonable nor in good faith.

82. Accordingly, Plaintiff and the IRS Fraud Class Members are entitled to recover, for each fraudulent information return, the greater of $5,000.00 or the sum of (1) their actual damages sustained as a proximate result of the filing (including the reduction in their future Social Security benefits, the loss of the qualified overtime compensation deduction under 26 U.S.C. § 225, the loss of credit for taxes withheld from their pay but never reported, and the costs attributable to resolving deficiencies asserted as a result of the filings), (2) the costs of the action, and (3) in the Court's discretion, reasonable attorneys' fees. *See* 26 U.S.C. § 7434(b).

83. Pursuant to 26 U.S.C. § 7434(e), Plaintiff Baker requests that the decision of the Court awarding damages include a finding of the correct amount that should have been reported in each information return at issue.

84. Pursuant to 26 U.S.C. § 7434(d), Plaintiff Baker will provide a copy of this Complaint to the IRS upon its filing with the Court.

85. This action is timely because it is brought within the later of six (6) years after the filing of the fraudulent information returns at issue or one (1) year after the fraudulent information returns would have been discovered by exercise of reasonable care. *See* 26 U.S.C. § 7434(c).

## C. IRS FRAUD CLASS ALLEGATIONS

86. All previous paragraphs are incorporated as though fully set forth herein.

87. Plaintiff Baker and the IRS Fraud Class Members bring their claims under 26 U.S.C. § 7434 as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all similarly situated individuals employed by Synergy at any time from six (6) years preceding the filing of the Original Complaint.

88. Class action treatment of the IRS Fraud Class Members is appropriate because, as alleged below, all of Federal Rule of Civil Procedure 23's class action requisites are satisfied.

89. **<u>Numerosity</u>**: The IRS Fraud Class is so numerous that joinder of all members is impracticable. On information and belief, there are dozens, if not hundreds, of current and former employees of Synergy for whom Defendants filed information returns underreporting the wages actually paid during the relevant time period.

90. **<u>Commonality</u>**: There are questions of law and fact common to the IRS Fraud Class, including but not limited to: whether Defendants filed information returns that underreported the wages actually paid to Plaintiff and the IRS Fraud Class Members; whether Defendants' filings were willful and fraudulent within the meaning of 26 U.S.C. § 7434(a); and whether Plaintiff and the IRS Fraud Class Members are entitled to recover the greater of $5,000.00 or their actual damages for each fraudulent information return under 26 U.S.C. § 7434(b).

91. **<u>Typicality</u>**: Plaintiff Baker's claims are typical of the claims of the IRS Fraud Class Members. Plaintiff Baker and the IRS Fraud Class Members were paid wages by Synergy, and Defendants filed information returns underreporting those wages pursuant to the same uniform practice.

92. **<u>Adequacy</u>**: Plaintiff Baker will fairly and adequately protect the interests of the IRS Fraud Class. Plaintiff Baker's interests are coextensive with, and not antagonistic to, those of the

absent IRS Fraud Class Members. Plaintiff Baker is represented by counsel experienced in litigating employment-related collective and class actions.

93. **Predominance and Superiority**: Common questions of law and fact predominate over any individual questions affecting only individual IRS Fraud Class Members. Liability turns on a uniform practice provable from Defendants' own payroll and tax records, and the $5,000.00 statutory minimum supplies a common and formulaic measure of damages. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, among other things, the IRS Fraud Class Members lack the financial resources or incentive to prosecute individual actions, and a class action will conserve judicial resources and ensure consistent adjudication.

94. Accordingly, the IRS Fraud Class should be certified as defined in Paragraph 65.

## VI.
## RELIEF SOUGHT

95. Plaintiff Baker respectfully prays for judgment against Defendants as follows:

a. For an Order certifying the IRS Fraud Class as defined in ¶ 65 and designating Plaintiff Baker as Representative of the IRS Fraud Class;

b. For an Order finding Defendants, jointly and severally, liable to Plaintiff and each IRS Fraud Class Member under 26 U.S.C. § 7434 and awarding, for each fraudulent information return, the greater of $5,000.00 or the sum of the actual damages sustained as a proximate result of the filing (including any costs attributable to resolving deficiencies asserted as a result of such filing), pursuant to 26 U.S.C. § 7434(b);

c. For a decision including a finding of the correct amount that should have been reported in each information return at issue, pursuant to 26 U.S.C. § 7434(e);

d. For an Order, to the extent available under the Court's equitable powers, directing Defendants to file corrected information returns with the IRS and the SSA for Plaintiff and each IRS Fraud Class Member;

e. For an Order awarding the costs of this action;

f. For an Order awarding reasonable attorneys' fees pursuant to 26 U.S.C. § 7434(b)(3);

g. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

h. For an Order awarding Plaintiff Baker a service award as permitted by law;

i. For an Order compelling the accounting of the books and records of Defendants, at Defendants' expense (should discovery prove inadequate); and

j. For an Order granting such other and further relief as may be necessary and appropriate.

Date: November 10, 2026

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexander*
**Clif Alexander**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy**
Federal I.D. No. 1122168
Texas Bar No. 24071993
lauren@a2xlaw.com
**Carter T. Hastings**
Federal I.D. No. 3101064
Texas Bar No. 24101879
carter@a2xlaw.com
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Counsel for Plaintiff and the Putative Class Members***